Filed 12/4/13  Lo v. Chen CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| SHANG JEN LO, | B245628 (cons w/ B245627) |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VS023928) |
| v. | |
| JACK CHEN, | |
| Defendant and Appellant. | |
| SHANG JEN LO, | |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VS023929) |
| v. | |
| SHU PING CHAN, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Thomas I. McKnew, Jr., Judge.  Affirmed in part and reversed in part.

Jack Chen, in pro. per., for Defendant and Appellant.

Shu Ping Chan, in pro. per., for Defendant and Appellant.

David L. Prince for Plaintiff and Respondent.

This case concerns two orders restraining the conduct of appellants Shu Ping Chan and her son, Jack Chen. After respondent Shang Jen Lo, a church pastor, engaged in litigation with Ms. Chan, appellants appeared at his church on multiple occasions. They talked with him after a service, interrupted a training session, sent an email to church leaders, and picketed on a nearby sidewalk. Fearing for his job, Mr. Lo petitioned the court for restraining orders. The trial court ordered appellants not to contact any members of the church, and to stay at least 100 yards away from the facility, among other locations. Finding two of the "keep away" directives unconstitutional, we reverse, but affirm the orders in all other respects.

**FACTUAL AND PROCEDURAL SUMMARY**

This consolidated case arises from two separate appeals by appellants Ms. Chan and Mr. Chen. Respondent is pastor of the First Evangelical Community Church (the church). In October 2005, respondent agreed with Ms. Chan to lend her $100,000 at an annual interest rate of 11 percent. In December 2009, Ms. Chan sued respondent, claiming that he had disbursed only $76,000. Ms. Chan also alleged that respondent breached an oral contract with her on another matter. In November 2011, a trial court ruled in favor of Ms. Chan and modified the note to reflect the $76,000 disbursement. In April 2012, a jury before a different court found respondent not liable on the oral contract claim. After the court denied her posttrial motion for attorney fees, Ms. Chan appealed. Division Five of this district affirmed. (*Chan v. Lo* (July 9, 2013), B239783 [nonpub. opn.].)

Soon after the jury verdict, the conduct of appellants at the church became an issue. Mr. Chen says he was concerned about respondent's lack of integrity in making usurious loans. Respondent claims appellants were bothered by the loss in the jury trial. In any case, the parties dispute the facts underlying an altercation at the church on May 13, 2012. Respondent argues appellants approached him immediately following a morning church service. They tried to speak with him and nearby parishioners about the jury trial. Respondent claims that this disrupted church services. Another pastor asked

2

appellants to leave. Appellants claim respondent slapped Ms. Chan's hand when she attempted to shake his hand. Then they talked about their court disputes for two hours, during which Ms. Chan argued "it is neither biblical nor . . . moral to make high interest rate loans."

On June 2, 2012, Mr. Chen sent an email in Chinese to church leaders that described the conversation on May 13. According to respondent, the email also alleged that respondent was involved in a Ponzi scheme. Appellants refer to a certified English translation of the message to show that the email made no such allegation, but no translation appears in the record. Soon flyers were found on cars in the church parking lot. According to Mr. Lo, their content was "very similar in nature to the email of June 2, 2012."

On September 30, 2012, appellants appeared at a training meeting conducted by respondent for 30 to 40 parishioners at the church. Appellants claim they attended the session, listened for some time, and then confronted respondent about the high interest rate loans when he began to talk about repentance. When Ms. Chan spoke about respondent's alleged dishonesty, he ended the meeting. Respondent and other church officials then asked appellants to leave, and called the Los Angeles County Sheriff.

On November 4, 2012, appellants stood outside the church holding signs stating, essentially, that respondent was dishonest. Again, someone called the sheriff. The responding officer declined to remove appellants from the sidewalk. Two days later, respondent received an email from church leaders expressing concern about the picketing. They worried about the safety of children, and about how some parishioners had decided to no longer attend services due to the protest. Respondent feared he would lose his job. As a result, he petitioned the court for a temporary restraining order against appellants. Respondent claimed appellants were involved in five incidences: the confrontations on May 13 and September 30, the email on June 2, the flyers on June 20, and the sidewalk demonstration on November 4. He contended that appellants were disrupting church services and threatening his employment. After the court denied the petition because there were "no acts . . . or threat[s] of violence," respondent filed a

3

second petition seeking to restrain appellants. The court granted that request. In relevant part, the orders prohibit appellants from contacting any members or leaders of the church, and require them to stay 100 yards away from respondent, his home, workplace, car, and the church. In response, appellants filed timely notices of appeal. We granted respondent's motion to consolidate.

## DISCUSSION

### I

Appellants argue the court erred in issuing the restraining orders because their conduct and communications did not amount to harassment, but were merely intended to communicate information about respondent's honesty, and thus the orders were improperly issued.

A trial court may issue an injunction where it "finds by clear and convincing evidence that unlawful harassment exists." (Code Civ. Proc., § 527.6, subd. (i).)[1] The statute defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) The "course of conduct" category of harassment "must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Ibid.*) The statute further defines this type of harassment as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email," having no legitimate purpose and which is not constitutionally protected. (§ 527.6, subd. (b)(1).)

---

[1] All subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

4

When reviewing injunctive orders pursuant to section 527.6, "[t]he appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.]" (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 (*R.D.*).) Accordingly, here "[w]e review the order granting the injunction under section 527.6 for substantial evidence." (See *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725 (*Duronslet*).)

The record contains substantial evidence that some of the conduct of both appellants amounted to harassment. Ms. Chan appeared at the church on three separate occasions over a seven month period to express her views regarding respondent. Viewing the facts in the light most favorable to the trial court's findings, her conduct was disruptive during at least two of these incidents. On May 13 and September 30, Ms. Chan was asked to leave the church grounds. She also was associated with the email to church leaders, which closely paralleled the language in the flyers later found on cars in the church parking lot. Mr. Chen is similarly implicated in these incidents, as he visited the church with his mother on each occasion, and sent the email on June 2. Appellants argue their conduct served a legitimate purpose, and was not threatening. But respondent's claim that he feared he would lose his job, and the evidence indicating church leadership's disapproval of the picketing, provide a basis for inferring the emotional distress required by section 527.6, subdivision (b)(3). In short, substantial evidence existed for the court to determine that this conduct by appellants amounted to harassment.

II

Appellants claim the trial court erred in admitting hearsay evidence during the December 2012 injunction hearing. They argue that two exhibits contain hearsay statements that should have been excluded.

Evidence Code section 1200 declares that "[e]xcept as provided by law, hearsay evidence is inadmissible." Subsequent sections provide various exceptions, allowing hearsay evidence to be admitted in court. (Evid. Code, §§ 1200-1319.) In addition, an

5

exception permits certain documents that would otherwise be inadmissible hearsay to be admitted during section 527.6 civil harassment injunction hearings. Section 527.6, subdivision (i) provides "[a]t the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry." "This would seem to authorize the court to admit hearsay evidence during hearings conducted pursuant to section 527.6, subdivision [(i)]." (*Duronslet*, *supra*, 203 Cal.App.4th at p. 729.) "We review any ruling by the trial court on the admissibility of evidence for abuse of [d]iscretion. [Citation.] A trial court abuses its discretion only when its ruling exceeds the bounds of reason, all circumstances being considered. [Citation.]" (*People ex rel. Owen v. Media One Direct, LLC* (2013) 213 Cal.App.4th 1480, 1483-1484.)

Appellants argue the court should have excluded two exhibits as inadmissible hearsay. The sheriff's department document and email from a church leader about the picketing on November 4 are admissible pursuant to section 527.6, subdivision (i), even if they are hearsay. Because the documents support inferences about respondent's emotional distress and appellants' actions at the church, the trial court did not abuse its discretion in admitting them.

III

Appellants also claim the orders violate their free speech rights under the United States and California constitutions.[2] They argue the orders amount to unconstitutionally broad restraints on protected speech, and thus should be reversed.

The California constitution provides speech protections broader than those in the United States Constitution. (See U.S. Const., 1st Amend.; Cal. Const., art. I, § 2, subd. (a); *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352,

---

[2]     Appellants contend Ms. Chan raised this constitutional issue in the trial court, but no court reporter was present to provide a record. Appellants also claim they raised the issue for the first time on this appeal. Assuming this constitutional claim was not raised at the trial court, we review it under our discretion to do so when "the asserted error fundamentally affects the validity of the judgment." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

365 ["[T]he language of the relevant California constitutional provision differs from, and in some respects is broader than, the federal Constitution" with regards to the "liberty of speech" clause here.].) Nevertheless, courts have interpreted both to contain strong presumptions against prior restraints on speech. (*New York Times Co. v. United States* (1971) 403 U.S. 713, 714 ["'Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.' [Citations.]"]; *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 886.) "The term 'prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.' [Citation.] Temporary restraining orders and permanent injunctions—*i.e.,* court orders that actually forbid speech activities—are classic examples of prior restraints." (*Alexander v. United States* (1993) 509 U.S. 544, 550.) At the same time, "leafletting, sign displays, and oral communications are protected by the First Amendment. The fact that the messages conveyed by those communications may be offensive to their recipients does not deprive them of constitutional protection. . . . [P]ublic sidewalks, streets, and ways . . . are 'quintessential' public forums for free speech." (*Hill v. Colorado* (2000) 530 U.S. 703, 715.)

United States Supreme Court jurisprudence specifies the primary inquiry for analyzing the constitutionality of prior restraints such as the orders in this case. "[W]hen evaluating a content-neutral injunction, we think that our standard time, place, and manner analysis is not sufficiently rigorous. We must ask instead whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." (*Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 765 (*Madsen*); *Planned Parenthood Shasta-Diablo, Inc. v. Williams* (1995) 10 Cal.4th 1009, 1019 [finding injunction to be content neutral where issued in response to physical harassment and intimidation of clinic patients, impelled solely by appellant's course of conduct and not content of speech, and injunction made no reference to appellant's viewpoints]; *R.D.*, *supra*, 202 Cal.App.4th at p. 191 [finding order restricting distribution of flyers within 100 yards of individuals to be content neutral].) In summary, an

7

injunction is constitutional only where it is content neutral, is supported by significant state interests, and does not burden more speech than necessary. (*Planned Parenthood Shasta-Diablo, Inc. v. Williams*, at pp. 1019-1025.) Whether the injunctions here "pass[] constitutional muster . . . are questions of law subject to de novo review. [Citations.]" (*R.D.*, at p. 188.)

Here, the orders burden more speech than necessary to achieve the government's interest. They preclude appellants from being present within 100 yards of the church, which presumably prohibits them from standing on the public sidewalk adjacent to the church. They also prohibit appellants from contacting any church members or leaders, for any reason at all. The broad sweep of this restraint restricts lawful as well as unlawful activity. Although the orders may have been intended only to prohibit conduct that concerns respondent, as written they could reach constitutionally protected speech, such as picketing on a public sidewalk and speaking with church members. (See *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 407 [finding unconstitutionally overbroad order prohibiting appellant from contacting any residents in mobile home park].) And, as in *Madsen*, less restrictive means were available to protect respondent from harassment. (*Madsen*, *supra*, 512 U.S. at pp. 775-776 [identifying limits on the time and duration of picketing and the number of pickets that could have achieved the same desired results of protecting appellants].)[3] Restricting appellants' presence at the church during certain hours, and limiting contact with church members only with regards to harassing conduct, would have achieved the same result here.

Respondent argues we should affirm the orders because they are not overbroad. He relies on a case in which a court affirmed an injunction involving harassing conduct regarding a psychiatrist's reputation. (See *R.D.*, *supra*, 202 Cal.App.4th 181.) In that case, the court found that the person sought to be enjoined had "a record of past

---

[3]      In *Madsen*, the court affirmed an injunction that restricted picketing to a 36-foot buffer zone only after protestors had previously blocked entrances and defied an earlier injunction. (*Madsen*, *supra*, 512 U.S. at pp. 758-769.) To the contrary, here there is no evidence that appellants blocked church entrances or violated any previous order.

harassment of R.D., . . . a history of angry outbursts and erratic behavior," appeared at the psychiatrist's workplace and child's school, and followed her to a grocery store. (*Id.* at p. 190.) As a result, R.D. feared for her safety given appellant's "temper . . . and intense rage," and sought an injunction. (*Id.* at p. 185.) The resulting orders prohibited appellant from distributing flyers within 100 yards of the psychiatrist, her family members, her car, residence, schools, and workplace. (*Id.* at p. 187.) In addition, the court noted that appellant failed to suggest any less restrictive alternatives that could have prevented the harassment. (*Id.* at p. 193.) These facts, central to the court's ruling to affirm the orders, distinguish it from the case before us. First, the orders here are much broader. In prohibiting appellants from coming within 100 yards of respondent, his home, workplace, car, and the church, the orders deny appellants the right to stand on the public sidewalk adjacent to the church. In addition, the orders restrict appellants' ability to contact any church member—even those having no relation to respondent. Finally, less restrictive alternatives, as outlined above, are available. Since the present orders are less specific and more expansive than those in *R.D.*, respondent's reliance on the case is misplaced.

Accordingly, because the orders here restrict more speech than necessary to prevent the harassment of respondent, we find them to be overbroad in violation of the United States and California constitutions.

## DISPOSITION

The orders are reversed insofar as they apply to prohibiting appellants from being on the public sidewalk adjacent to the church and from being in contact with any church

9

members.  In all other respects the orders are affirmed.  Appellants to have their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

SUZUKAWA, J.