Filed 7/5/16  Kraut v. Dellaventura CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LESLEY KRAUT, | B263057 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. ES018281) |
| v. | |
| DEAN DELLAVENTURA, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mary Thornton House, Judge.  Affirmed.

Horvitz & Levy, Steven S. Fleischman; and Randall A. Spencer for Plaintiff and Appellant.

Broedlow Lewis, Jeffrey Lewis and Kelly Broedlow Dunagan for Defendant and Respondent.

_____

Appellant Lesley Kraut appeals from the trial court's order denying her request for a civil harassment restraining order (Code Civ. Proc., § 527.6)[1] against the neighbor living next door to her mother's house, respondent Dean Dellaventura. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, respondent moved into the house immediately next door to the house of appellant's mother in North Hollywood. At some point after that, appellant's mother moved out of her house, which has remained vacant for many years.[2] Appellant goes to her mother's house three to four times a week for about an hour to clean, water plants, and move the garbage barrels. The houses have side-by-side driveways.

**Request for Restraining Order**

On September 18, 2014, appellant filed a request for a civil harassment restraining order against respondent. She described respondent's harassment as follows: On September 15, 2014, he tried to run her over with his SUV in the driveway, then called her names; on September 16, 2014, he told her he was looking her up on the Internet, and was "stalking" and "taunting" her; on September 17, 2014, he stood behind his SUV taking pictures of her with a telephoto lens, which scared her because she thought he had a gun; on March 20, 2014, he was "cussing" at her while he was on her mother's property; on March 26, 2014, respondent's dog was off leash and ran towards her; in mid-August 2014, his friend Adrian Luna (Luna) trespassed and poured motor oil on her mother's driveway; and on August 21, 2013, respondent and another friend surrounded her car while "cussing" at her, said they hated her mother's house, and told her to get the "F" out of there. She stated that respondent started harassing her "from 2011," that his harassment had escalated, and that he was now harassing her each time she went to her mother's house. She gets spasms in her back from the stress and has become very afraid

---

[1]     All further statutory references shall be to the Code of Civil Procedure unless otherwise indicated.

[2]     Appellant claimed her mother moved out in 2007. Respondent claimed the mother moved out in 2003.

of respondent. She asked the trial court to order respondent not to photograph her, videotape her, verbally abuse her, scare her from behind, stalk or Internet-search her, conduct surveillance on her, and wash or blow his leaves onto her mother's property. She also asked the court to order him to park correctly in his driveway so as not to block her access to her mother's yard or garage.

The trial court granted a temporary restraining order and set the matter for a hearing on October 2, 2014.

**Written Response**

Respondent submitted a written response, stating that appellant's mother's house had been in a state of disrepair for many years and has lowered the property value of his house. He complained to the Department of Building and Safety. He has seen appellant at her mother's house more frequently in the last year and a half. He stated that he has never communicated with appellant outside of his driveway, does not know where she lives, and has never stalked her. He denied trying to run her over with his SUV, threatening her with physical harm, conducting surveillance of her, taking pictures of her, surrounding or approaching her car, making the statements attributable to him, or owning a dog. He stated that one day appellant told him, "I know who you are. You are a photographer, and you are doing illegal things in your house." He later told her, "I know who you are, and I know who I am dealing with." According to respondent, he was referring to an opinion by Division Four of this court, which noted that appellant had been twice tried on charges of attempting to murder her ex-husband and both trials ended in a hung jury.[3] Respondent stated that appellant had surveillance cameras installed at her mother's house that are aimed directly at his house, and that she has videotaped him

---

[3] Respondent is referring to *In re Kraut* (2004) 2004 Cal.App.Unpub. Lexis 6547. The opinion actually states: "Prior to the events at issue in the present appeal, Kraut had been twice tried on charges of attempting to murder Boden. The first trial ended in a hung jury. In the second trial, the jury acquitted Kraut of the attempted murder charge but could not reach a verdict as to the charge of assault with a deadly weapon; the latter charge was later dismissed. Kraut claimed she attacked Boden when he entered her home and she believed him to be an intruder." (*Id.* at pp. *3–*4.)

and his guests on numerous occasions despite his requests to stop. He claimed that she is the one doing the harassing and that he is concerned for his own safety. Respondent submitted photographs of both properties.

Respondent also submitted a declaration from Luna, who stated that in mid-August 2014, he parked his car on respondent's driveway to change the motor oil. Respondent was not present. As Luna was cleaning up, he noticed appellant quietly "sneaking up" behind him taking a videotape of him with her cell phone. Appellant "rudely approached [him] and began screaming and cursing," and she kicked his tools so that they were completely on respondent's driveway. Luna apologized for some of the tools being on her driveway. He denied taking any videotapes of her, raising his voice, making any threats, or spilling any oil on the driveway.

**Written Reply**

Appellant submitted a declaration in which she denied sneaking up on Luna, stated that she was calm when speaking to him and that her videotape proves she was calm. She also claimed that two of respondent's photographs were taken from her mother's backyard, and she asked for protection against trespassing. She submitted photographs showing respondent's SUV partially parked on her mother's driveway and leaves from respondent's magnolia tree only on her mother's driveway.

Appellant also submitted three other witness declarations. Her gardener declared that respondent complains about dust being blown towards his house and car, despite the gardener being careful and diligent in his work. The gardener is afraid of respondent, whose "malicious" behavior is injuring the gardener's health and relationship with his family.

Chris Manitius (who was apparently walking in the neighborhood to inquire about selling homes) declared that respondent approached him to ask if he was from the city. Respondent stated that he had called several times to complain. Mr. Manitius said he was not from the city and left.

Appellant's sister declared that respondent had been harassing her and her mother since the time he moved into his house. He complained about her mother's cats, which

4

"began to disappear until they were all gone." Whenever her mother had a barrier erected on her side of the driveway to prevent respondent from parking his car on her side, "the barriers continually disappeared." Respondent complained that her mother's house was in a state of disrepair, but "the house was constantly being damaged." On March 8, 2012, she and appellant had to repair three broken windows, and it "did not appear that the windows were broken in an attempt to enter the house."

**The Hearing**

At the hearing on October 2, 2014, both appellant, who appeared in pro per, and respondent testified. The trial court began the hearing by asking appellant why she was seeking a restraining order. Appellant responded that "every time I come [to her mother's house], Mr. Dellaventura approaches me, cusses at me with the B word and the C word. And it's accelerated. His aggression has accelerated." She explained that she goes to her mother's house "[a]t least three to four days a week." The trial court stated: "You said he comes up and he calls you names. Can you describe that for me. How close does he get to you? How loud does he get?" After first discussing her belief that respondent was researching her on the Internet, appellant then stated, "Yes. The day that he snuck up behind me, on the 16th, he was taunting me." She explained that he "taunted" her by saying he was researching her and knew all about her. Appellant finally addressed the name calling: "With the car, when he saw me measuring my mom's driveway, he came up the driveway, all the way to the block wall which divides the two garage areas. . . . And I went to my mom's side of that wall to be safe. He can't go any further unless he actually swung around. And I walked past him when he stopped, past the car. He got out of his car and started . . . . [¶] . . . He says, 'You bitch. You cunt. Stay off of my property.' And I wasn't even on his property."

Respondent's counsel then questioned appellant, who stated, "He's cussed at me. . . . [¶] . . . [¶] He just says things about the house, like, 'I hate this fucking house and I want it to go away.'' She admitted that respondent has never touched her or threatened her with physical violence. She stated that he goes up to her car constantly, "just comes up to me, right up to me." She has seen him using his hose to wash leaves

5

from his tree onto her mother's property. She denied approaching respondent, and stated she did not want to have any contact or conversation with him, "[h]e only cusses and yells and harasses."

Respondent testified that he is a photographer, but denied taking pictures of appellant; he only takes pictures of her mother's property. Appellant has never asked him to move his SUV from the driveway, and he mostly parks in his garage. He claimed that appellant's mother had around 40 feral cats and the stench from the feces and urine was "unbearable"; he denied harming any of the cats. The mother's house was in "horrific" condition when he moved in. It affects his property value and also damages his own house, because cracks in her driveway allow water to seep under his driveway and there are termites at her house.

Respondent admitted calling appellant a "bitch" and a "cunt" "because she's put video cameras in my face and won't stop. She's been very aggressive towards me."

**The Ruling**

At the end of the hearing, the trial court made the following statements, which are the focus of appellant's opening brief: "Let me explain something here. A lot of times these [requests] are filed because you all want me to solve your problem. But I'm not a problem-solver. I'm a decision-maker. [¶] Mr. Dellaventura, calling any woman those names is about as obnoxious as you can get. [¶] . . . [¶] I'm saying that for the record. Just listen to me. Don't argue with me because that may hurt your case. [¶] But these particular restraining orders were not designed to stop name-calling. They were designed to stop violence. They were designed to stop continuous, ongoing, unprivileged harassment. [¶] So, Mr. Dellaventura, sounds like, and from looking at the pictures, is very concerned about his property values and he's taking it out on you, Ms. Kraut. And I understand that. But this type of case or this type of lawsuit was not designed to determine property values, it was not designed to determine who can drive up a driveway and who can't, leaf-blowing. [¶] It's not clear and convincing evidence of harassment that fits into what this particular lawsuit, this mechanism for civil harassment is designed to do. As I explained earlier, this is a serious matter with collateral consequences in

6

terms of a police database. Your remedies for him blocking your parking and blowing leaves and all that might be some kind of civil suit, but it's not—it's not enough evidence here. [¶] Now, Mr. Dellaventura, I—like I said, I don't think your behavior has been entirely blameless here, either. If I were a problem-solver, I would say there's all kinds of grants and councils with the city where you can rehab property, keep it up. You all could work together to get the property in better shape. You can decide whether you're going to sell it or not. [¶] But I'm not a problem-solver. I'm just making a decision. And my decision is the evidence here isn't sufficient to show enough for me to issue a police record on Mr. Dellaventura. Although I will comment—and it's probably not appropriate, but I will say, anyway, Mr. Dellaventura, those are very offensive words."

The court issued a minute order the same day, stating: "Court finds clear and convincing evidence does not exist and request for restraining order is denied. [¶] All temporary restraining orders, if any, are dissolved and case is dismissed."

Apparently, no notice of entry of judgment or order was served either by the clerk or any party. Appellant filed her notice of appeal 179 days later.

## DISCUSSION

Section 527.6, subdivision (a)(1) provides: "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."

Subdivision (b)(3) of section 527.6 defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

"Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not

7

limited to, the use of public or private mails, interoffice mail, facsimile, or computer email. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" (§ 527.6, subd. (b)(1).)

"At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

"Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citations.] It does so by providing expedited injunctive relief to victims of harassment. [Citation.]" (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412 (*Brekke*).)

Appellant acknowledges that when reviewing a decision on a request for a restraining order, we normally review a trial court's findings, whether express or implied, for the existence of substantial evidence. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) Appellant, however, argues that the deferential substantial evidence standard should not apply here because the trial court did not perform its required task of weighing the evidence. According to appellant, the trial court's comments at the end of the hearing demonstrate that the court believed section 527.6 was "not designed to stop name-calling," but was only designed to prevent violence. In other words, appellant asserts, "[b]y construing section 527.6 in an unduly narrow manner, which excluded obscene and vulgar language from the definition of harassment and which only afforded protection if actual violence has occurred or will occur, the trial court improperly disregarded one of the three, alternative, definitions of harassment provided in section 527.6, subdivision (b)(3)."

Contrary to appellant's assertion, it does not appear that the trial court misunderstood the scope of section 527.6. While the trial court correctly noted that civil harassment restraining orders are designed to stop violence, it also correctly noted that they "were designed to stop continuous, ongoing, unprivileged harassment." It appears that the trial court was familiar with the statutory language of section 527.6, which states

8

that the court may ask questions and that a restraining order should issue only upon a showing of clear and convincing evidence of unlawful harassment. While the trial court did not make express findings of credibility, it did repeatedly state that it found no clear and convincing evidence sufficient to warrant issuance of a restraining order. Thus, we conclude that the trial court did perform its required task of weighing the evidence.

Substantial evidence supports the trial court's ruling. While appellant claimed that respondent "cussed" at her every time she went to her mother's house, she only described one such incident. The court specifically asked appellant to describe the names respondent called her and to explain how close he gets to her and how loud he gets. Appellant described a single incident when respondent drove his SUV up his driveway, then called her two offensive names. She did not describe how close or loud he got. Appellant never described any other incidents of "name-calling," even though given ample opportunity. For example, after respondent's attorney questioned appellant, the trial court asked her, "Anything else you want to tell me or show me?" Appellant spoke about her mother's cats, and the court noted "[t]hat was seven years ago." At the end of respondent's testimony, the court again asked appellant if she had anything further, and appellant stated that she did not approach respondent or trespass, but "vice versa, yes, all the time."

Essentially, the evidence shows that the parties do not like or trust one another, and that they have had ongoing neighbor disputes over trespassing, leaf blowing, car parking, and the use of their side-by-side driveways. But viewing the evidence in the light most favorable to respondent as the prevailing party, (see *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514), we find that it supports the trial court's ruling.

Appellant's reliance on *Brekke, supra,* 125 Cal.App.4th 1400 is misplaced. There, a civil harassment injunction was properly issued to a mother when her daughter's teenage boyfriend wrote a series of letters to the daughter and one to the mother which were laced with profanity and which threatened violence to the mother. Here, there was

9

no threat of violence. (*Id*. at p. 1413.) Moreover, the boyfriend's letters were extremely disturbing and exhibited aberrant thoughts and behavior.

We reject appellant's argument that the trial court abused its discretion in excluding her two-second videotape of Luna taken with her cell phone. Appellant explained that she had attempted to take a photo of Luna's car on her cell phone, but that the phone was actually set on "video" instead. Appellant, however, never specifically requested that the videotape be admitted. When the trial court mentioned the videotape later in the hearing, appellant stated that it "isn't really of him. It's him coming out and me telling him just go to the other side. And it was just of his car." The trial court responded, "I'm going to save time. I'm not sure that that is very illuminating for me." Appellant argues that the videotape "went to the heart" of respondent's portrayal of her as aggressive and would have impeached Luna's declaration that she was screaming and yelling at him because the videotape showed they had a "pleasant" conversation. Under the circumstances here –where the videotape was only two seconds long, did not capture the entirety of appellant's encounter with Luna, and was mostly a shot of his car—we cannot find that its exclusion was an abuse of discretion.

Appellant also argues that the trial court's order must be reversed because the court considered an improper factor in denying her request—the impact a restraining order would have on respondent in terms of a police record. We agree with appellant that the trial court should not have considered this factor in making its determination, as it is not an element of the statute. But since this does not appear to have been the trial court's primary reason for its denial of her request for a restraining order, reversal is not warranted. (See *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co*. (1997) 59 Cal.App.4th 6, 15–16 [we review a trial court's ruling, not its reasons].)

Finally, respondent requests his costs and attorney fees in responding to this appeal pursuant to section 527.6, subdivision (s) ("The prevailing party in any action brought under this section may be awarded court costs and attorney's fees, if any"). In light of the trial court's comment that respondent was not entirely blameless, we exercise our discretion to decline his request for costs and attorney fees on appeal.

10

**DISPOSITION**

The order denying appellant's request for a civil harassment restraining order is affirmed. The parties to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                ASHMANN-GERST


We concur:


_____, P. J.
      BOREN


_____, J.
      CHAVEZ