Filed 6/6/25  C.M. v. Sims CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| C.M.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EMILY SIMS,<br><br>        Defendant and Appellant. | E084079<br><br>(Super.Ct.No.<br>ICSICVCH202369009)<br><br>OPINION |

APPEAL from the Superior Court of Inyo County.  Brian L. McCabe, Judge.  Affirmed.

Emily Brinton Sims, in pro. per., for Defendant and Appellant.

Liebersbach & Ibrahim and Jeremy M. Ibrahim, for Plaintiff and Respondent.

1

The trial court granted C.M. a one-year civil harassment restraining order against Emily Sims. C.M. sought to renew the restraining order just before it expired, and the court entered an order renewing the restraining order for five years. (Code Civ. Proc., § 527.6, subd. (j)(1); unlabeled statutory references are to this code.) Sims appeals from the five-year renewal order. We affirm.

## BACKGROUND

In March 2023, C.M. applied for a civil harassment restraining order against Sims. C.M. was in a romantic relationship with Matthew Sieleman. Sims is Sieleman's former romantic partner, and Sims and Sieleman have a daughter.

In support of C.M.'s application for the restraining order, C.M. described incidents in which Sims had appeared at C.M.'s home uninvited and had followed Sieleman and C.M. in her car. During the car incident, Sims tailed Sieleman and C.M.'s car, flashed her lights and honked her horn, and attempted to force their car onto the side of the road. C.M. also attested that Sims sent text messages to Sieleman threatening to accuse C.M. of kidnapping and driving while intoxicated, without any evidence or support. Sims then repeatedly contacted C.M.'s employer (in person, by phone, and by email) and falsely accused C.M. of the same crimes, threatened to report C.M. to the California State Bar,[1] and requested that the employer present C.M. for questioning by Sims. Sims also emailed C.M. directly, asking whether she would submit to questioning by Sims and stating that Sims would appear at her house with a "'public authority.'" In addition, Sims

---

[1] C.M. is a lawyer.

2

posted her accusations against C.M. on Facebook, named C.M.'s mother in the post, and pleaded with C.M.'s mother to "talk some sense into" C.M. C.M. submitted documentary evidence of the various messages and emails and the Facebook post. She attested that Sims's actions had caused her severe emotional distress and anxiety; C.M. could not sleep, had difficulty focusing at work, and was concerned about her job.

Sims filed a response and testified at the hearing on C.M.'s application. Sims said that she did not intend to harm C.M. and that she merely wanted an investigation into C.M.'s and Sieleman's conduct in order to protect her own daughter.

In March 2023, the court granted C.M.'s request for a civil harassment restraining order against Sims. The restraining order protected C.M. for one year.

C.M. applied to renew the restraining order in March 2024, just before the order expired. C.M.'s declaration in support of the renewal application described the earlier incidents supporting the one-year restraining order. In addition, she attested to more communications that occurred from May 2023 to March 2024, and she submitted documentary evidence of those communications. For instance, Sims sent a text message to Sieleman calling C.M. "dishonest, sick, selfish, [and] evil" and stating that Sims would "never stop working to protect" herself and her daughter from C.M. Sims sent other text messages to Sieleman accusing C.M. of lying and child abuse, stating that C.M. and Sieleman would "'pay dearly,'" and threatening to have C.M. disbarred. Sims also emailed C.M.'s employer again, accusing C.M. of crimes and calling on public officials to stop the crimes. And Sims again posted about C.M. on Facebook; the public post

3

accused C.M. of manipulating and "mentally abus[ing]" Sims's daughter. Most recently, Sims sent Sieleman a text message in March 2024, stating: "Restraining order is lifted in about a month[.] The lies she told to get the order, in retaliation, will be turned around against her." The message further stated that C.M. "exposed and hurting" was "the course for correction" and that C.M. was "an unethical lawyer . . . who will be found in contempt and pay dearly for her deeds."

C.M. declared that Sims's accusations continue to be false and that despite all of the accusations, C.M. has never been arrested, charged with a crime, or convicted of any crime. C.M. feared for her safety and was concerned that Sims appeared to be "counting down how much time remains in the initial restraining order."

Sims filed a response to C.M.'s application to renew the restraining order. The trial court issued a tentative ruling granting the renewal application. The tentative ruling observed that the majority of Sims's response concerned the propriety of the initial restraining order, but Sims never appealed from that order. The tentative ruling concluded that C.M. had presented sufficient evidence that Sims continued to indirectly contact C.M. through Sieleman and C.M.'s employer, knowing that C.M. would read the messages or be told about them. The tentative ruling also rejected Sims's argument that the First Amendment protected her speech, because her messages concerned private matters and were not constitutionally protected or immune from civil restraining orders.

4

At the hearing in May 2024, the court adopted its tentative ruling and granted C.M.'s application to renew the restraining order. The court found evidence of a reoccurring pattern of abuse and harassment by Sims, including emails, Facebook posts, and other communications with third parties that were intended as indirect contact with C.M. The court further found that C.M.'s expressed concern and fear of future harassment were genuine and reasonable, and there was a reasonable probability that Sims's wrongful acts would be repeated in the future. The court renewed the restraining order for five years.

DISCUSSION

Sims challenges the initial restraining order on procedural grounds and raises several arguments about the evidence supporting the renewed restraining order. Her arguments lack merit.

Section 527.6 provides that the trial court must issue a restraining order if the court finds by clear and convincing evidence that the requesting party has suffered harassment. (*Id.*, subds. (a), (i).) The statute defines harassment as "a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.*, subd. (b)(3).)

5

The court may renew a civil harassment restraining order for an additional five years "without a showing of any further harassment since the issuance of the original order." (§ 527.6, subd. (j)(1).) Section 527.6 thus "grants the trial court discretion to renew a restraining order based on its review of the record of the past harassment underlying the original issuance of the restraining order and without the protected party presenting any new evidence." (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 91 (*Cooper*).) Still, the court should renew the restraining order only if it finds a "reasonable probability" that the restrained party would repeat the past wrongful acts in the future. (*Id.* at p. 90.)

We review the court's decision to renew a restraining order for abuse of discretion. (*Cooper*, *supra*, 242 Cal.App.4th at p. 89.) We review for substantial evidence the court's express and implied factual findings underlying the restraining order. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

Sims argues that the court violated her right to due process in connection with the initial restraining order by considering evidence that C.M. submitted one day before the hearing. Sims did not appeal from the initial restraining order. That order is now final,

6

and she cannot bring challenges to the initial order on appeal from the renewed order. (*Cooper*, *supra*, 242 Cal.App.4th at p. 92.)

Sims's other arguments do not show that the court abused its discretion by granting the renewed restraining order or that substantial evidence does not support the court's factual findings. C.M. was not required to show any further harassment since the issuance of the initial restraining order, but she nevertheless presented ample evidence of further harassment. Sims continued to contact C.M.'s employer to accuse C.M. of criminal conduct and continued to send messages to Sieleman, saying that C.M. would "pay dearly for her deeds" and would be "exposed and hurting." And Sims indicated that C.M. would face retaliation when the initial restraining order expired. All of that constitutes substantial evidence that there was a reasonable probability that Sims would repeat her wrongful acts in the future.

Sims argues that there was no evidence that she intended to harass C.M. and that her messages were intended to protect her daughter and resolve issues with her coparent. Again, section 527.6 did not require C.M. to show any further harassment in order to secure a renewed restraining order. But even if section 527.6 required such a showing, the statute does not require an intent to harass. Rather, the statute requires "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (*Id.*, subd. (b)(3).)

7

To the extent that Sims is arguing that her messages to Sieleman and C.M.'s employer had a legitimate purpose, the court could reasonably conclude that they had no such purpose. Sims does not explain how statements threatening C.M.—namely, that C.M. would pay dearly for her deeds or that C.M. would be exposed and hurting— protected Sims's daughter or would resolve coparenting issues. The same is true with respect to the messages to C.M.'s employer. Sims contacted the employer to accuse C.M. even after the employer responded in March 2023 and asked her to "direct [her] efforts" to "an alternative forum," like "law enforcement, child protective services, and/or the Court system." The employer also told Sims that continuing to contact them would "not produce the results it appears you are seeking." Sims does not explain how repeatedly contacting C.M.'s employer and accusing C.M. of crimes served a legitimate purpose, especially after the employer asked Sims to stop contacting them.

Moreover, to the extent that Sims argues that messages to third parties cannot support the restraining order, she is incorrect. Harassing conduct may be "directed at a specific person" (*id.*, subd. (b)(3)) even if the restrained party did not actually contact that specific person. It is sufficient if the restrained party sends messages knowing that they would be discovered or read by the protected party. (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405, 1411, 1413 [the evidence showed that the defendant knew that the plaintiff would search for and read letters sent to the plaintiff's daughter, so those letters were sufficient to show a harassing course of conduct directed at the plaintiff]; cf. *People v. Planchard* (2025) 109 Cal.App.5th 157, 165-166, 168-169 [under the

8

materially similar definition of harassment in Pen. Code, § 649.6, subd. (e), direct contact is not required, and the evidence need only show that the nature of the conduct "makes it reasonably foreseeable that the victim would become aware of it"].)  The court could reasonably conclude that Sims knew that the messages sent to C.M.'s romantic partner and C.M.'s employer would reach C.M.  And according to C.M.'s declaration in support of the application to renew the restraining order, Sieleman and C.M.'s employer did share the messages with her.

Sims lastly argues that C.M. made "false sworn statements."  Specifically, she suggests that C.M. falsely stated that Sims contacted C.M. directly while the initial restraining order was in effect.  C.M.'s declaration in support of the renewal application stated that Sims sent text messages, emails, and voicemails "to various individuals," including Sieleman, C.M., and C.M.'s employer.  But that was in the section of the declaration describing the conduct that occurred before issuance of the initial restraining order.  The declaration went on to describe incidents that occurred later, while the restraining order was in effect.  Nothing in the declaration indicates that Sims contacted C.M. directly while the restraining order was in effect.  The record thus does not support Sims's assertion that C.M. made false statements to that effect.[2]

---

[2]     Sims filed a document entitled "additional citings and oral argument statement of Emily Brinton Sims."  (Capitalization omitted.)  She asserts that the filing falls under rule 8.254 of the California Rules of Court.  That rule permits a party to submit a letter informing this court of new authority if the party "learns of significant new authority . . . that was not available in time to be included in the last brief that the party filed or could

*[footnote continued on next page]*

9

## DISPOSITION

The order is affirmed.  C.M. shall recover her costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____

J.

We concur:


McKINSTER_____

         Acting P. J.


FIELDS_____

         J.

---

have filed."  (Cal. Rules of Court, rule 8.254(a).)  The letter may cite the new authority but may not discuss the authority or make arguments.  (*Id.*, rule 8.254(b).)

Sims's filing does not cite any new authority that was unavailable when she filed her reply brief on appeal, and we decline to consider the arguments that she improperly raises in the filing.  She also appears to request that we take judicial notice of her response to the request to renew the restraining order.  We deny that request, because the document is already part of the record on appeal.

10