[No. B229681. Second Dist., Div. One. Dec. 21, 2011.]

R.D., Plaintiff and Respondent, v.
P.M., Defendant and Appellant.

## COUNSEL

Arnold & Porter, Jake R. Miller and Matthew T. Heartney for Defendant and Appellant.

O'Melveny & Myers, Michael G. Yoder, Stephanie L. Noble and Lennis N. Collins for Plaintiff and Respondent.

## OPINION

**CHANEY, J.**—Therapist R.D. believed she was being stalked and harassed by P.M., a former patient.[1] On June 1, 2009, R.D. obtained a one-year civil harassment restraining order under Code of Civil Procedure section 527.6. The order restrained P.M. from harassing or contacting R.D. or her family, and prohibited P.M. from coming within 100 yards of R.D., her office, her family members, or her children's schools.

After the restraining order's one-year term expired at the end of May 2010, however, P.M.'s harassment resumed—or so R.D. believed. She was confronted by P.M. at her local market in a manner she considered threatening; she found dozens of consumer-review Web sites posted with P.M.'s messages attacking her personal and professional conduct; flyers with disparaging messages were posted and reposted by P.M. at the entrance to her office building, on nearby cars, and in front of her son's elementary school; and she learned that P.M. had begun undertaking volunteer activities at her children's elementary and middle schools.

Taking these events to indicate that P.M. had resumed her harassment, R.D. sought a renewal of the civil harassment restraining order. The court granted the second restraining order on October 22, 2010, finding that the first order

---

[1] The parties requested at argument that we identify them in this opinion by their initials.

apparently had not "sent home the message." The second order restrains P.M. from harassing or contacting R.D. or her family, and prohibits P.M. from coming within 100 yards of R.D., her office, her family members, their vehicles, or her children's schools, this time for a three-year term.

P.M. appeals from the second order, contending that as a matter of law the material facts do not support a finding of harassment, and that the injunction unconstitutionally restricts her freedom of speech. We affirm.

## BACKGROUND

R.D. is a licensed clinical social worker with a psychotherapy practice in Culver City, California. P.M. had been R.D.'s patient for three or more years, until R.D. terminated the therapy on October 31, 2008. R.D. ended the therapy because P.M. had become increasingly hostile toward her, had screamed obscenities at her, had refused to leave her office, had obtained her home phone number and used it to call her home repeatedly, and had threatened to stalk her and to " 'hang around your car.' "

*The first harassment restraining order*

After the therapy ended, R.D. believed she was being stalked and threatened by P.M. She believed that P.M. followed her to her son's school and to his baseball practice; that P.M. began volunteering at her children's schools; and that P.M. had made false reports about her to a local police detective.

About six weeks after R.D. ended the therapy, P.M. confronted R.D. in a stairwell of her office building, begging her to resume the therapy (which R.D. refused to do). In late January 2009, P.M. telephoned R.D. a number of times, threatening to file a " 'client abandonment' " complaint with R.D.'s licensing board unless R.D. took her back as a client.[2] In early February 2009, R.D. received repeated calls from P.M. (which she did not answer), and a number of professional colleagues with offices in her building received appointment requests from P.M. (or in one case, from a caller who would not identify herself, but who had P.M.'s caller ID). P.M. also confronted R.D. with verbal hostility in the parking lot of R.D.'s son's school, where P.M. had apparently followed her, again demanding that she take P.M. back as a client. And the next day R.D. received a voice mail message from P.M. stating that P.M. had seen R.D. " 'swearing' " at her " 'through a window.' "

---

[2] P.M. apparently did file a complaint with R.D.'s licensing agency. On May 20, 2010, R.D. was informed by California's Board of Behavioral Sciences that its investigation of the complaint against her had been completed, that no evidence substantiated any violation relating to her licensure, and that "our file has been closed."

At that point R.D. filed a police report for stalking, and spoke with the principals of her children's schools. The principal of her daughter's middle school said that he was first contacted by P.M. on November 6, 2008 (one week after R.D. terminated P.M.'s therapy), in connection with the promotion of a Ballona Wetlands event. The principal of her son's elementary school said P.M. had approached her, unsolicited, on January 6, 2010, to promote and assist with a planned soccer event. According to R.D., P.M. did not live in Culver City, she had no children of her own, and she had never indicated during the course of her therapy that she had worked with elementary or middle school students or had volunteered at any Culver City schools.

In mid-February 2009, a police detective advised R.D. that P.M. had told him she works with Culver City schools, and that R.D. had had a sexual relationship with her at her apartment. Soon afterward, R.D. began to find numerous postings on consumer-related Internet sites, which she attributed to P.M., accusing R.D. of being " 'unstable' " and " 'abusive.' " And in mid-March she was told by the representative of a debt collection agency that P.M. had given R.D.'s name regarding an outstanding hospital bill.

In early April 2009, R.D. saw P.M. at R.D.'s son's baseball practice at a local park, and immediately afterward she received (but did not answer) two cell phone calls from P.M. That night she received an e-mail from P.M. that she characterized as harassing, through her listing on a profession-related Internet site. Early the next week she learned that P.M. had attended a luncheon at R.D.'s daughter's middle school the previous week, at which a group of students of which her daughter was a member had been introduced (although it turned out that her daughter had not attended the luncheon). Later that month she learned that P.M. was involved in a media project with her daughter's next-door friend.

At the beginning of May 2009, R.D. found numerous new derogatory postings about her on various Internet sites, which she believed had been posted by P.M.[3] And she received another e-mail from P.M., addressed to her through a professional publication, accusing her of being " 'unethical and destructive towards her clients,' " adding " 'but the sex was fun.' "

R.D. believed that P.M. had a "history of problem drinking, losing her temper, and intense rage." She expressed her fear that these behaviors would escalate into violence. On May 8, 2009, she filed a request for "orders to stop harassment."

---

[3] According to R.D., P.M. admitted that the postings were hers, though many of them were anonymous or used other names.

After hearing the matter on June 1, 2009, the superior court (Gerald Rosenberg, J.) entered a civil harassment restraining order, under Code of Civil Procedure section 527.6,[4] on the approved Judicial Council form, Los Angeles Superior Court case No. SS018094 (*R.D. v. P.M.* (2009, No. SS018094)) (the first restraining order). P.M. apparently did not appeal from the first restraining order. R.D. does not contend that P.M. violated the first restraining order.[5]

*The second harassment restraining order*

After the restraining order's one-year term expired in June 2010, however, R.D. believed that P.M.'s harassment of her resumed. On September 20, 2010, she filed a second civil harassment restraining order request. The second request noted the first restraining order, based on P.M.'s "history of following me, appearing at my children's schools, sending harassing emails, making false accusations and defaming me on the internet."

R.D. testified at the hearing that she made her second request for a restraining order due to concerns for her safety based at least in part on "things that [she] learned" while treating P.M. as her therapist. As the most recent example of harassment, she cited an incident that had taken place the previous day: P.M. had approached R.D. in a Trader Joe's market where she regularly shopped; P.M. had offered to remove her Internet postings about R.D. if R.D. would apologize to her; P.M. had then followed her to the check stand and stared at her in what seemed to her to be a threatening manner; and R.D. was then too upset to continue, but instead reported to the cashier that P.M. was bothering her and "ran out" without purchasing her groceries.

In addition, R.D. testified, after the first restraining order had expired P.M. had distributed flyers at her office building on nine occasions over a period of seven days, and apparently had also distributed flyers at her son's school.

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[5] The facts recited above are taken primarily from R.D.'s verified request for the first civil harassment order. The record does not contain P.M.'s response (if any) to that request, nor does it contain any record of the hearing or the trial court's findings (if any) with respect to the first harassment order. We therefore presume, as we must, that the alleged facts were found to be true, and that the first order was fully supported by the evidence. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] [all intendments and presumptions are indulged in to support validity of order on matters as to which record is silent]; *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1112–1113 [274 Cal.Rptr. 447] [order granting injunction necessarily implies that trial court found knowing and willful course of conduct that seriously alarmed, annoyed or harassed plaintiff, and that plaintiff actually suffered substantial emotional distress].)

Because some of those occasions were at night when she was coming and going from her office, she was "worried that [P.M.] was in the vicinity," and she became scared. In light of P.M.'s history of becoming very angry and screaming obscenities at her before the termination of her treatment, her refusal to leave the office when R.D. decided to end the treatment, and her tendency to become very erratic and intoxicated, these circumstances frightened R.D. "And I felt how unstable she is and the fact that she's continued to be focused on me two years after we terminated makes me concerned and the fact that some of the stalking involved getting close to my children." "And all of this put together," including P.M.'s approaches to the children's schools, made R.D. "very concerned and worried that she was obsessively focused on me."[6]

On October 22, 2010, the court (David J. Cowan, Temporary J.) issued its "restraining order after hearing to stop harassment," on the mandatory Judicial Council form. The order requires P.M. to stay at least 100 yards away from R.D. and members of her immediate family, their home, workplaces, vehicles, and schools. And it specifies acts of personal conduct that P.M. must not do to R.D. or to members of her immediate family, including harassing, attacking, threatening, assaulting, or stalking them, destroying their personal property, keeping them under surveillance, or blocking their movements.[7]

On December 21, 2010, P.M. filed her appeal from the trial court's October 22, 2010 entry of the second restraining order. The order is appealable as an appeal from an order granting an injunction. (§ 904.1, subd. (a)(6).) The notice of appeal was timely filed within 60 days of its entry. (Cal. Rules of Court, rule 8.104(a)(1).)

## DISCUSSION

Conventional wisdom tells us that time heals all wounds. Maybe so. But the trial court concluded that one year was not enough, and that more time will be required before the wounds exposed in this case will cease to fester and their effects can be expected to fade.

P.M.'s appeal contends that the second restraining order was unjustified and unconstitutional because the facts do not constitute civil harassment as a matter of law and her distribution of flyers disparaging R.D. was constitutionally protected. We find no merit in these arguments.

---

[6] Consistent with the applicable standard of review, we disregard the contrary evidence presented by P.M. (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 564.)

[7] The order also prohibits P.M. from owning or possessing firearms. However, P.M.'s appeal does not challenge, or even mention, that provision.

### 1. *Standards of Review*

P.M. argues that because the evidence is in all important respects undisputed and the only disputed facts are immaterial, her appeal raises only questions of law that are governed by a de novo standard of review. R.D. contends that restraining orders based on section 527.6 are reviewed to determine whether substantial evidence supports their factual bases, and that in this case substantial evidence fully supports the challenged order.

Both parties are in some respects right. The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137–1138 [67 Cal.Rptr.3d 2] [injunctions under § 527.6 are reviewed to determine whether factual findings are supported by substantial evidence; trial court's determination of controverted facts will not be disturbed on appeal].)[8] But whether the facts, when construed most favorably in R.D.'s favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review. (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 890 [4 Cal.Rptr.3d 69, 75 P.3d 1] [reviewing court independently examines whether facts come within 1st Amend.]; *Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1515 [80 Cal.Rptr.3d 745] [existence or nonexistence of substantial evidence is question of law].)

### 2. *Substantial Evidence Supports the Second Restraining Order.*

■ Section 527.6, subdivision (a), provides that a victim of harassment (as the statute defines it) "may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section." Subdivision (b) of section 527.6 defines "harassment" to include not just actual violence or threats of violence, but also "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person," that serves no legitimate purpose, and that is not constitutionally protected activity. To constitute harassment, the course of conduct "must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b).) The section's remaining subdivisions further

---

[8] P.M. is in error in contending that the only facts disputed by the parties are immaterial. The parties had some disagreements about objective events, and sharp disagreements about the inferences—for example, as to P.M.'s past and future intentions, as well as the impact of her conduct on R.D.—that the court could and should draw from the direct and circumstantial evidence. (See *Ensworth v. Mullvain, supra,* 224 Cal.App.3d at p. 1110 [trial court's conclusion can be supported by inferences drawn from direct and circumstantial evidence].)

define the requirements for civil harassment restraining orders, and the procedures for their issuance. (See *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1413 [23 Cal.Rptr.3d 609] [question is whether evidence is sufficient to show harassment sufficient to " 'place a reasonable person in fear for his or her safety, or the safety of his or her immediate family' "].)

P.M. argues that the record contains no evidence of assault, battery, or stalking after the first restraining order was issued in June 2009; "the only conduct at issue," she argues, is her distribution of flyers in R.D.'s office building and on nearby cars, which did not involve stalking. This conduct, she argues, cannot be found to constitute a credible threat of violence, or to lack any legitimate purpose.

The trial court's evaluation of the evidence was not so circumscribed, however. The court had before it evidence—indeed, an unchallenged determination—that as of June 2009 P.M. had been engaged in a willful course of harassment that would cause a reasonable person to suffer emotional distress and that in fact caused R.D. to suffer substantial distress. Because P.M.'s harassment of R.D. had stopped during the first restraining order's one-year term, however, without more, the trial court could not justifiably conclude in October 2010 that the harassment would continue.

But there was more. From the evidence, the court could conclude that after the first restraining order had expired P.M. had again targeted R.D. for harassment. Accepting every inference favoring the judgment, the evidence showed that P.M. had come to the market at which R.D. regularly shopped in order to confront R.D. in a threatening manner; that she had come to R.D.'s son's school to distribute flyers in order to continue her harassment and stalking of R.D. and her family; and that she had on many occasions come in and around R.D.'s office building in a successful effort to alarm R.D. and to put her in fear for her safety.

While it is true that an injunction restraining future conduct is authorized by section 527.6 only when it appears from the evidence that the harassment is likely to recur in the future (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402, 403 [5 Cal.Rptr.3d 137]), in evaluating the likelihood that the harassment will continue the court was not limited to events that occurred after the first restraining order was entered. The lapse of the first harassment restraining order did not erase the facts on which the order was based, and did not preclude the court from considering the existence of those facts in evaluating the need for a new order. Nor was the court restricted as to the nature of the evidence from which it could draw an inference of a likelihood that the harassment would resume; the court could consider any evidence showing a likelihood of future harassment, including evidence of

conduct that might not itself constitute harassment. (§ 527.6, subd. (i) [in determining whether restraining order is needed, court "shall receive any testimony that is relevant, and may make an independent inquiry"].) Behavior that may not alone constitute an intentionally harassing course of conduct logically still might show an intention to resume or continue an already established course of harassing conduct.

The evidence before the court showed that P.M. not only had a record of past harassment of R.D., but also a history of angry outbursts and erratic behavior and a remaining obsessive focus on R.D.'s termination of her professional relationship with P.M. two years earlier.[9] The trial court was not required to consider only the post-June 2010 conduct and events nor to evaluate whether those events would alone be a sufficient basis on which to conclude that P.M. had engaged in a course of harassing conduct. The record was not a clean slate in June 2010. P.M. had already been engaged in a harassing course of conduct; the issue was whether her recent conduct, viewed in the context of her record of harassment, was sufficient to indicate that she was likely to harass R.D. in the future. (*Russell v. Douvan, supra*, 112 Cal.App.4th at p. 403 [restraining order is intended to prevent future harassment, not to punish past harassment].)

█ Here, the court had before it proof that P.M. had in the past engaged in a course of conduct demonstrating her intention to harass R.D., knowingly engaging in conduct that would have caused alarm and distress to a reasonable person, and that had alarmed and distressed R.D., without legitimate purpose. (*Ensworth v. Mullvain, supra*, 224 Cal.App.3d at pp. 1112–1113 [grant of the injunction necessarily implies that trial court found that defendant knowingly and willfully engaged in course of conduct that seriously alarmed, annoyed or harassed plaintiff, and that plaintiff suffered substantial emotional distress].) And the court received evidence from which it was entitled to find (despite P.M.'s contrary evidence and suggested inferences) that P.M. had promptly reappeared as a disturbing presence in R.D.'s life after a yearlong respite, in order to resume her harassing course of conduct. That record was sufficient to support the trial court's implied conclusion "that wrongful acts [constituting harassment] are likely to recur." (*Russell v. Douvan, supra*, 112 Cal.App.4th at p. 402.) The evidence thus was sufficient to support the challenged restraining order.

---

[9] The evidence was by no means one-sided. P.M. presented evidence that her confrontation with R.D. at the market, and her presence at R.D.'s children's schools, were wholly innocent and were not part of any scheme of harassment. But in examining the sufficiency of the evidence we must disregard the evidence that does not support the trial court's express and implied findings. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874 [197 Cal.Rptr. 925] [if substantial evidence supports finding, "it is of no consequence" that a court could believe contrary evidence or could draw contrary inferences to reach a contrary conclusion (italics omitted)].)

### 3. *The restraining order does not unconstitutionally impair P.M.'s rights.*

The challenged order restrains P.M. from harassing or stalking R.D. or her family members, and requires P.M. to stay at least 100 yards away from them. P.M. contends that the order impermissibly infringes her constitutional freedom of speech rights, because her distribution of flyers about R.D. addresses a matter of public concern, and because the order constitutes an overbroad content-based prior restraint that burdens her speech more than is necessary to prevent the harassment.

To the extent the order limits P.M.'s speech, it does so without reference to the content of her speech. The restraining order does not prevent P.M. from expressing her opinions about R.D. in any one of many different ways; she is merely prohibited from expressing her message in close proximity to R.D. and her family.

The order does not mention or explicitly prohibit P.M. from engaging in any particular form of speech with respect to R.D.—including the sorts of speech about which R.D. had complained in her restraining order requests.[10] It does not mention or prohibit P.M. from making statements on any subject or of any content, as long as she does so at a distance, and the statements' contents do not constitute illegal harassment within the meaning of section 527.6. It does not prohibit P.M. from contacting R.D.'s licensing agency, from distributing flyers about R.D., or from posting derogatory criticisms of R.D. on Internet sites. It only restrains P.M. from doing those acts (or any others) within 100 yards of R.D. and members of her immediate family, their home, workplaces, vehicles, and schools. The order thus cannot be accurately characterized as a content-based prohibition on speech. (*Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 763–764 [129 L.Ed.2d 593, 114 S.Ct. 2516]; *DVD Copy Control Assn. v. Bunner, supra,* 31 Cal.4th at pp. 877–879 [injunction that is justified without reference to content of restricted communications is content neutral].)

▮ Neither the First Amendment to the United States Constitution nor article I, section 2 of the California Constitution prohibits courts from incidentally enjoining speech in order to protect a legitimate property right. (*DVD Copy Control Assn. v. Bunner, supra,* 31 Cal.4th at p. 881; see *Ensworth v. Mullvain, supra,* 224 Cal.App.3d at p. 1113 [Legislature created § 527.6 to protect individuals' constitutional rights to pursue safety, happiness and privacy].) Because the incidental restraint on P.M.'s speech that is a

---

[10] The trial court was careful to disclaim any reliance on either the truth or falsity of P.M.'s disparaging messages, or the contents of her Internet postings, which it recognized to be constitutionally protected.

result of the restraining order is content neutral, the standard that governs whether it can pass muster under the federal and state Constitutions' free speech guarantees is the same as that governing the examination of any injunctive restriction: whether it imposes no more burden than is necessary to serve its legitimate governmental interests and whether it is thus a reasonable "time, place, and manner" restriction in light of the importance of those interests. (*Madsen v. Women's Health Center, supra*, 512 U.S. at pp. 765–766 [content-neutral injunctive restriction on speech should be no more burdensome to defendants than necessary to provide complete relief to plaintiffs]; *DVD Copy Control Assn. v. Bunner, supra*, 31 Cal.4th at pp. 882–883 [speech on matters of purely private concern is entitled to less 1st Amend. protection than speech concerning public issues].)

In this case, the speech that the challenged restraining order infringes upon is P.M.'s speech (to R.D. and her family, and perhaps to others in flyers she would distribute) having to do with her opinions about R.D., with only slight apparent relationship to any issue of public interest.[11] It thus is entitled to "less First Amendment concern." (*Dun & Bradstreet v. Greenmoss Builders, Inc.* (1985) 472 U.S. 749, 759 [86 L.Ed.2d 593, 105 S.Ct. 2939].) The restraining order, on the other hand, serves an important governmental and public purpose—the prevention of violence and harassment, and the protection of R.D.'s and her family's right to safety and privacy—that section 527.6 was enacted to serve. (*Brekke v. Wills, supra*, 125 Cal.App.4th at p. 1412.)

Still, the restraining order's incidental infringement of P.M.'s speech can be justified only to the extent that it is no broader or more restrictive than is necessary to prevent P.M.'s harassment of R.D. (*Madsen v. Women's Health Center, supra*, 512 U.S. at pp. 765–766; *DVD Copy Control Assn. v. Bunner, supra*, 31 Cal.4th at pp. 882–883.) P.M. argues that the restraining order in this case breaches that limitation (relying primarily on cases that involve restrictions on picketing and public demonstrations about subjects of public importance). She suggests that the court "could have," for example, "limited [P.M.] to distributing flyers during non-business hours or on the weekend, when [R.D.] would not be at her office."

In her reply brief P.M. argues (for the first time) that *Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141 [57 Cal.Rptr.3d 320, 156 P.3d 339], precludes the trial court's order in this case. In that case the defendant had

---

[11] P.M. argues on appeal that she had distributed flyers about R.D. in the area of R.D.'s office "to inform consumers about her negative experience with [R.D.] as a clinical social worker." But she also told the court that she was prompted to distribute flyers about R.D. when R.D.'s licensing agency reported that R.D. had "done nothing wrong." The trial court concluded from this and other evidence that P.M.'s intention was less to address an issue of public importance than to harass R.D.

been permanently enjoined from (among other things) "initiating contact" with certain individuals associated with a restaurant across the street from her home, in response to her persistent harassment of restaurant employees and customers and defamatory statements about the restaurant and its owners. The Supreme Court affirmed the Court of Appeal's reversal of the judgment, holding that the permanent restriction on "initiating contact" was unnecessarily burdensome on the defendant's right to free expression (" 'sweeps more broadly than necessary' "), and therefore was invalid under *Madsen v. Women's Health Center, Inc., supra*, 512 U.S. 753, in light of available alternatives. (40 Cal.4th at pp. 1145–1146, 1160–1161.)

Here, too, the injunction is unnecessarily overbroad, P.M. argues, because it "is not tailored to minimize its impact on [her] speech," by (for example) "limiting [P.M.] to distributing fliers [only] during non-business hours or on the weekend . . . ." But in the trial court P.M. offered neither evidence that the scope of the injunction's restrictions on her freedom of expression are unnecessarily overbroad, nor any suggestion that lesser restrictions might be sufficient to accomplish the injunction's legitimate purposes. While she now volunteers that her distribution of flyers in and near R.D.'s office building could reasonably be restricted to evenings and weekends, she made no such suggestion in the trial court, and she offers no citation to evidence showing that such a restriction would accomplish the injunction's purpose of preventing intentionally harassing encounters with R.D. The evidence in the trial court was that R.D.'s use of her office was not necessarily restricted to weekday hours, and that she would "go to and from my building at night, and the fliers would come at night, and I was worried that [P.M.] was in the vicinity."

In light of this evidence, the absence of any grounds for adopting alternative restrictions that would have limited R.D.'s use of her office, and P.M.'s failure to suggest or identify the existence of any other less restrictive alternatives that the court could have imposed to prevent the threatened harassment, the trial court acted within its discretion.

## CONCLUSION

The trial court was faced with conflicting accounts of the parties' actions and intentions, as is often the case. One party saw a clear pattern of intentional harassment, reasonably leading her to fear for her safety; the other party interpreted the events differently, claiming that her conduct showed nothing of the sort. The court chose to credit the evidence showing an intentional pattern of harassment, as it was entitled to do. Faced with the pattern of harassment that had justified the earlier one-year injunction, and with the resumption of the harassment shortly after the one-year hiatus, the

trial court was justified in concluding that further restraint would be required in order to end the harassing conduct. The three-year restraint it imposed on P.M.'s actions, though significant, is fully supported by the evidence before it, and is not unreasonable or overbroad in light of the evidence.

## DISPOSITION

The order is affirmed. Respondent to receive her costs on appeal.

Mallano, P. J., and Johnson, J., concurred.