Filed 8/20/24  Katz v. Ramsey CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| BARRY STEVIN KATZ, | B317296 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STRO02368) |
| v. | |
| JANE RAMSEY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy M. Pellman, Judge.  Affirmed.

Jane Ramsey, in propria persona, for Defendant and Appellant.

Frank D. Rubin and Iris Shelub for Plaintiff and Respondent.

————————————————

# INTRODUCTION

Barry Stevin Katz obtained a five-year civil harassment restraining order against Jane Ramsey. Ramsey appeals, arguing that the order is not supported by substantial evidence, violates her right to free speech, and is barred by claim and issue preclusion. She also contends the trial court failed to consider a 2019 agreement between the parties that allegedly allowed her to contact Katz, prevented her from presenting hearsay testimony, and applied the incorrect burden of proof. We conclude the trial court did not err and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Parties' Prior Relationship and Katz's 2019 Petition for Domestic Violence Restraining Order*

Katz and Ramsey had a brief dating relationship, and went out at least four times around 2016. Ramsey thereafter contacted Katz repeatedly and followed him. There is also evidence in the record that Ramsey paid for various items and travel for Katz and his sons, and wired him substantial amounts of money in 2018 and 2019.

In February 2019, Katz filed a petition for a domestic violence restraining order (DVRO) against Ramsey, alleging a physical assault and continuous harassment and unwanted electronic and in-person contacts over the preceding three years. The trial court denied Katz's petition for a DVRO on March 12, 2019.

Ramsey contends that, in November 2019, the parties entered into a written agreement under which she agreed to have no further contact with Katz except by way of prearranged

2

meetings for which he would receive compensation for his time spent with her in the form of a credit against the amounts she had given him.[1]

B. *Katz's 2021 Petition for a Civil Harassment Restraining Order*

On May 17, 2021, Katz filed a petition for a civil harassment restraining order against Ramsey that is the subject of this appeal. This time Katz sought a restraining order under Code of Civil Procedure section 527.6 seeking protection for himself, his two minor sons, and two adult friends (Elisabeth

---

[1] Ramsey attached a photograph of the purported agreement to her response to Katz's petition. The agreement states that for prearranged meetings of two hours, Ramsey "will be credited an amount of $2,000 (two thousand dollars) per meeting towards [Ramsey]'s financial gifts to [Katz] that were deposited in [Katz]'s bank account. ¶ [Ramsey] will credit [Katz] an extra $500 (five hundred dollars) for every additional 30 minutes (or less) extra period of time. [Ramsey] will credit [Katz] an extra $50 (fifty dollars) for every email (excluding the first one responding to each week's email which is the only one that will be read), text, social media post/comment, or phone call to his cell or business that is sent/made to [Katz] after the signed date of this agreement (11/1/19)." Ramsey also purportedly agreed, among other things, not to enter Katz's property, "verbally or physically accost" him during or after their meetings, "approach" or "confront" him in public, otherwise Katz would "discontinue all meetings and electronic contact, and [Ramsey] would automatically agree to forfeit the remaining monies as a gift to [Katz], as she has already originally agreed to do."

3

Avila and Steven Gorey).[2]  The petition attached declarations from his sons and his employee Kyle Kimber, describing incidents of Ramsey trespassing on Katz's residential property at night in October 2020 and January 2021.

The trial court issued a temporary restraining order on May 17, 2021 as to Katz and his sons.

On June 28, 2021, Ramsey in propria persona filed a response to Katz's petition in which she admitted "attending (*sic*) at the petitioner's home" for the purpose of attempting to obtain the return of funds she lent him.  Ramsey denied assaulting Katz or harassing him at other locations, disputed his characterization of their relationship (which she described as "an intimate relationship over a lengthy period"), and argued that Katz's petition merely repeated the same allegations from his 2019 petition for a DVRO.  Ramsey attached the trial court's minute order dismissing Katz's 2019 petition, as well as emails and bank records from 2018 and 2019 reflecting her payment of certain expenses for Katz's sons and wire transfers to Katz's bank account.

C.    *Hearing and Testimony on Katz's Petition for Civil Harassment Restraining Order*

The court held an evidentiary hearing on June 29, 2021, at which Katz and Ramsey testified, as did Kimber.  Katz and Ramsey were both sworn in at the beginning of the hearing, and responded to questions from the court throughout the course of each other's testimony.

---

[2]    Undesignated statutory references are to the Code of Civil Procedure.

4

Katz testified that in the six months preceding the hearing Ramsey's harassment had "escalated exponentially." For example, Ramsey had entered Katz's residential property (the area surrounding his home) through his front gate over one hundred times. Katz testified that in the six months preceding the hearing he had also received over a thousand different messages from Ramsey via email and text, from over one hundred different email addresses she had created, and over a thousand different phone numbers. Katz testified that he knew it was Ramsey because of the nature of the messages, containing derogatory messages such as calling him "the devil" or stating "F off," followed by "I need to see you. I can't wait to see you. Please, please see me." Katz further testified that in the past 12 months, he had received more than 6,500 such emails from her.

Katz testified that the most recent emails he had received from Ramsey were from early 2021. Katz also submitted, and the court reviewed, a video containing images of his email history and surveillance footage of Ramsey repeatedly entering Katz's property by opening and entering through a closed gate, despite a "no trespassing" sign. The court asked Ramsey if she recognized the footage, and she stated, "I already admitted to it." Katz testified that the most recent videos he had of Ramsey entering his property were from May 24 and 25, 2021, after the temporary restraining order had issued.

Katz testified the harassment caused him "major distress" because "you don't know what's going to happen. You don't know what they [i.e., Ramsey] have. They can hurt you, hurt your family." He testified it was stressful for him to have to call the police or look out the window and see "somebody walking

around." Katz testified the harassment caused him to feel "[s]tress for me, my business, and my sons." He further testified it was "major distress because all we have in our lives is [to be] safe in our homes, safe in our property" and Ramsey repeatedly coming in and out of his property was "emotionally disturbing."

In response to questions from the court, Ramsey admitted she had sent Katz multiple emails, including "many [that] were sent to e-mails that he doesn't have access to anymore." Ramsey also conceded that she expected many of the emails in Katz's video were her emails to him from the past year (i.e., 2020 to 2021). The trial court noted her admission, and stated: "The record should reflect that there are what appears to be hundreds and hundreds of e-mails [from Ramsey's alias] Georgia or Georgia Day, up until the present time, back from 2019."

Katz further testified Ramsey had sent letters to him from false addresses (using the address of female friends of his) and had "left several different envelopes underneath [his] door with checks" made out in amounts from $1,000 to $200,000 with the messages "please see me" and "I'm sorry." He also testified Ramsey had contacted and harassed his friends at other addresses. The court reviewed and admitted into evidence several checks, including one from September 2020 with the memo "Jane Katz." Ramsey admitted the checks were from her, "from about a year ago," and testified she sent them because she was "emotionally distraught."

The trial court stated at the close of Katz's direct testimony: "[T]he court has read and reviewed the documents which include hundreds of e-mails from respondent. Respondent has admitted those are, in fact, her e-mails . . . . The other evidence, at least to this point, has been presented including

6

respondent coming into petitioner's home uninvited even though the gate does indicate there is [a] 'do not trespass' sign. The court also is in receipt of multiple, multiple checks, probably about six which respondent has also admitted to sending petitioner for amounts such as a $1,000, $500, with the memos that say things like meet up, with a note from her."

Kimber testified that on January 14, 2021, around 9:00 to 9:30 p.m., he saw Ramsey looking in Katz's kitchen window and then running away from the house as Kimber arrived in his car to drop off some food at Katz's residence. He could see her despite the darkness because there was a motion activated spotlight at the property. The court found Kimber was credible. Katz testified that he installed security cameras after that incident.

Ramsey testified she went up to the house and contacted Katz because he had "wrongly taken $280,000" from her. The court stated that, in Ramsey's response to Katz's petition, she admitted to contacting him and stated in the response that it was because of a money dispute; Ramsey replied, "Exactly." She testified she "went up there lots of times" in 2021 and would "just keep going up there and leave" because she could not tell if he was home. Ramsey denied seeing a "no trespassing" sign. She stated she went there "peaceably" and "in peace and with a calm nature," but admitted "my going on his property is unacceptable."

Ramsey testified that she sent messages to Katz in February and March 2021. She further testified that her last emails to Katz were more than six months before the hearing, that she "stopped calling him months ago," and that she most recently texted him one year before the hearing. Ramsey stated she "was doing it as a way to vent emotionally" and characterized

7

her own conduct as her "breaking down." Ramsey testified she had not physically approached Katz for over a year. Ramsey offered to show her phone as proof she had not sent emails, texts, or calls to him in over six months, except for a "couple days in February and a couple days in March," but the court stated, "I believe your testimony."

After considering the evidence before it, the trial court stated: "The course [of] conduct must be to cause a reasonable person to suffer substantial emotional distress. This course of conduct absolutely qualifies for a civil harassment restraining order. There is no question in the court's mind based on the evidence as well as based on respondent's [own] admissions throughout the hearing as well as in her response that she has continuously harassed and willfully and knowingly tried to contact the petitioner through thousands of e-mails, thousands of phone calls, appearing at his home multiple, multiple times even after the temporary restraining order was issued and in violation of the temporary restraining order." The court also found that "[t]he respondent has admitted to essentially all of the conduct."

The trial court issued a five-year civil harassment order requiring Ramsey not to contact Katz or his two sons, and to stay 150 yards away from them at all times. The court noted that Katz's adult friends would need to file their own petition. The court admonished Ramsey that its order meant she could not be within 150 yards of Katz's entire property line, not just his house.

Ramsey filed a motion for new trial on July 19, 2021, and filed an amended motion for new trial on September 8, 2021. She admitted "incidents of technical trespass" but denied that all the messages were sent by her, alleged that new evidence (a restaurant receipt) showed she could not have been at Katz's

8

property when Kimber testified she was there, and argued that a five-year order was excessive and that Katz "welcomed keenly" her contacts because under their 2019 agreement "he profited from them" by "charg[ing] [her] for each call, text, and email." She reattached the parties' 2019 agreement to her amended motion for new trial, along with a declaration stating that her referenced attachments had been previously submitted to the trial court in conjunction with her response.

On October 7, 2021, the trial court denied Ramsey's motion for new trial, stating it did "not find that anything that is stated changes the court's conclusion that the evidence overwhelmingly showed by a preponderance of the evidence that the restraining order was necessary in this case."

Ramsey timely appealed.[3]

## DISCUSSION

A.     *Standard of Review and Governing Law*

A civil harassment restraining order under section 527.6 is an injunction that requires a person "to refrain from a particular act." (§ 525.) "The Legislature enacted section 527.6 in 1978 in order 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.'"

---

[3]     At oral argument, Katz's counsel represented the financial dispute between the parties resulted in a confidential settlement agreement and that Katz is repaying Ramsey over an unspecified period of time.  We deny Ramsey's and Katz's requests, in their appellate briefs, that we take judicial notice of the civil collection action that precipitated the settlement agreement.  (See Cal. Rules of Court, rule 8.252.)

(*Olson v. Doe* (2022) 12 Cal.5th 669, 677 (*Olson*).) "'"It does so by providing expedited injunctive relief to victims of harassment."'" (*Hansen v. Volkov* (2023) 96 Cal.App.5th 94, 103 (*Hansen*); accord, *Olson,* at p. 677.) A trial court may issue a civil harassment restraining order upon a finding, by clear and convincing evidence, of one of three qualifying types of harassment: "[1.] unlawful violence, [2.] a credible threat of violence, or [3.] a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose," that is reasonably likely to recur (§ 527.6, subds. (a)(1), (b)(3) & (i)).

A "'course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email." (§ 527.6, subd. (b)(1).) "Constitutionally protected activity is not included within the meaning of 'course of conduct.'" (*Ibid.*) "The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.,* subd. (b)(3).) At the hearing on a petition for a civil harassment restraining order, the court "shall receive any testimony that is relevant, and may make an independent inquiry." (*Id.,* subd. (i).) If the trial court finds by clear and convincing evidence that unlawful harassment exists and is reasonably likely to recur, it may issue a civil harassment protective order of up to five years. (See *id.,* subds. (i) & (j).)

10

We review the trial court's grant of a civil harassment protective order under section 527.6 for substantial evidence. (See *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 (*R.D.*) ["The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record."].) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.) "In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in Code of Civil Procedure section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review. We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Schild*).)

"We review a trial court's decision to admit or exclude evidence 'for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.'" (*People v. Powell* (2018) 5 Cal.5th 921, 951 (*Powell*); accord, *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885.) We may reverse a judgment for the erroneous exclusion of evidence only upon a

11

showing the error prejudiced the appellant. (See Cal. Const., art. VI, § 13; Evid. Code, § 354; *People v. Koontz* (2002) 27 Cal.4th 1041, 1078-1079; *People v. Hansel* (1992) 1 Cal.4th 1211, 1223.)

We review de novo questions of law. (See *Hansen, supra,* 96 Cal.App.5th at p. 104 [constitutionality of civil harassment restraining order is question of law subject to de novo review]; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507 [application of collateral estoppel or issue preclusion is a question of law subject to de novo review].)

B.    *The Civil Harassment Restraining Order Is Supported by Substantial Evidence*

Substantial evidence supports the trial court's restraining order. Katz testified that Ramsey sent him thousands of harassing email and text messages throughout 2020 and 2021, which escalated "exponentially" in the six months preceding the June 2021 hearing. Katz further testified that Ramsey trespassed on his property hundreds of times in the six months preceding the hearing (including May 2021 after the temporary restraining order issued), and that she left several envelopes under his door with checks and notes to him. Katz testified this conduct by Ramsey was "emotionally disturbing" to him and caused Katz "major distress." Kimber, whose testimony the trial court found credible, testified that he observed Ramsey looking in Katz's kitchen window and running away at night in January 2021. And Ramsey admitted during the hearing that she repeatedly entered Katz's property in 2021, and emailed him as recently as February and March 2021.

Based on the evidence before it, the trial court expressly found that Ramsey engaged in a knowing and willful course of

12

conduct directed at Katz. And by issuing the restraining order, the court impliedly found that this course of conduct seriously alarmed, annoyed, and harassed Katz, that such conduct served no legitimate purpose, and that it was reasonably likely to recur. The court also impliedly found that Ramsey's conduct would cause a reasonable person in Katz's position to suffer emotional distress, and that Katz actually suffered from such distress. On matters in which the record is silent we presume the trial court made the factual findings necessary to support its order. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549-550, fn. 11.)

The level of repeated, ongoing unwanted contact by Ramsey and her entering Katz's property constitutes a "course of conduct" that "seriously alarm[ed], annoy[ed], or harasse[d] [him], and that serve[d] no legitimate purpose." (§ 527.6, subd. (b)(3).) The repeated nature of Ramsey's attention on Katz, including entering his property in May 2021 after the temporary restraining order had issued, was sufficient to support a finding that her course of conduct was reasonably likely to recur. Moreover, such conduct would cause a reasonable person to suffer substantial emotional distress, and did actually cause substantial emotional distress to Katz. (See *ibid.*) Although Ramsey argues she had a "legitimate purpose" of seeking the return of money she apparently provided to Katz, the thousands of texts and email messages went far beyond any legitimate communication seeking repayment. The record before us reflects that Ramsey sent Katz derogatory messages apologizing or pleading to see him, or attempting to press additional funds on him through checks left

13

under his door. We cannot say such conduct served a legitimate purpose.

Ramsey further argues that: Katz's "allegations" at the time of the hearing on the restraining order were outdated and had been "completely resolved"; her contacts with him were always peaceful; and any contact in 2020 to 2021 was justified by their 2019 written agreement. She further contends the trial court found credible her testimony that her contacts with Katz had subsided and that her conduct was for the purpose of obtaining repayment of a debt. Ramsey also argues Katz could not have had any fear or distress from her course of conduct because their 2019 agreement permitted contact if she paid Katz for meeting with her.[4]

On substantial evidence review, "'[i]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.'" (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300; accord, *Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 54 ["It is not our role to reweigh the evidence or substitute our factual determinations for that of the trial court."].) Instead, we

---

[4] Ramsey also argues there was no "credible threat of violence" in her conduct. But the restraining order here was not issued on the basis of violence or threat of violence, but on "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose," and "which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

14

must resolve any factual conflicts and credibility questions in favor of Katz and the challenged order. (See *Schild, supra,* 232 Cal.App.3d at p. 762; *R.D., supra,* 202 Cal.App.4th at pp. 188, 193.) Although Ramsey admitted sending multiple messages and checks to Katz, as well as entering his property, she disputed Katz's account of her behavior and the volume of messages, and asserted that her intentions were "in peace." Thus here, "[t]he trial court was faced with conflicting accounts of the parties' actions and intentions, as is often the case. One party saw a clear pattern of intentional harassment, reasonably leading [him] to fear for [his] safety; the other party interpreted the events differently, claiming that her conduct showed nothing of the sort. The court chose to credit the evidence showing an intentional pattern of harassment, as it was entitled to do." (*R.D.,* at p. 193.)[5]

Ramsey also argues the trial court improperly applied a preponderance of the evidence standard rather than the clear and convincing evidence standard mandated by section 527.6. But her only support for this contention is a statement from the court when it denied her motion for a new trial as follows: "the evidence overwhelmingly showed by a preponderance of the evidence that the restraining order was necessary." Ramsey's argument is not persuasive. First, nothing in the reporter's transcript during the hearing on the restraining order, and nothing in the court's restraining order (which incorporates section 527.6 by reference) indicates the court applied a preponderance of the evidence standard. Second, Ramsey's only

---

[5] Ramsey's arguments relating to the 2019 agreement are addressed in Part E.

15

support is a statement the court made, not at the hearing on the restraining order, but at the subsequent hearing on her new trial motion. But when examined in context, it is evident that the court misspoke. Indeed, immediately before the statement on which Ramsey relies, the trial court accurately, if somewhat inartfully, stated, "[t]he question in whether or not to grant a new trial is whether or not the evidence showed enough for the verdict to be made." (See § 657, subd. (1) [new trial may be granted on "[i]nsufficiency of the evidence to justify the verdict or other decision."].)

As noted, the evidence before the trial court of Ramsey's harassment was ample and there was substantial evidence supporting a finding of each of the requisite elements for harassment under the clear and convincing evidence standard.[6] (See *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1411-1415 [affirming restraining order under § 527.6 for substantial evidence of "knowing and willful course of conduct" harassment, by clear and convincing evidence]; cf. *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 498-502 [affirming § 527.6 restraining order for substantial evidence of "credible threat of violence" harassment, by clear and convincing evidence].)

---

[6] Ramsey argues it was inappropriate for the trial court to apply the procedures of section 527.6 because the facts did not qualify as "true 'harassment'" as defined by that statute. Ramsey contends a "normal civil lawsuit" with full discovery would have been more appropriate. Because the Legislature has authorized the section 527.6 procedure to provide expedited injunctive relief to victims of harassment, and we conclude the facts are legally sufficient to constitute civil harassment as defined by section 527.6, this argument is unmeritorious.

16

C.   *The Civil Harassment Restraining Order Is Not Barred by*
     *Res Judicata or Collateral Estoppel*

Ramsey argues that the trial court's order is barred by res judicata or collateral estoppel because her conduct was the subject of Katz's 2019 DVRO petition, which was denied by the trial court.

The doctrine of res judicata or claim preclusion bars a party from relitigating an issue previously decided by a court.  (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.)  "'Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.'" (*Id.* at p. 91.)  But that doctrine "does not bar a later claim if new facts or changed circumstances have occurred since the prior decision."  (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 179.)

Collateral estoppel, or issue preclusion, is "the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.)  "[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id.* at p. 825.)

Here, the trial court noted there had been a 2019 petition and expressly directed Katz to focus his testimony on Ramsey's conduct during the six months preceding the June 2021 hearing. Katz complied with the court's directive and limited his testimony accordingly, focusing on events in 2020 and early 2021. The trial court also limited the factual basis for its order to

17

events occurring after the March 2019 denial of Katz's petition for a DVRO. The court considered pre-2020 messages and conduct only as evidence of the overall context and time span of Ramsey's harassment of Katz.

In short, because the civil harassment restraining order was based on facts occurring after the denial of the DVRO petition, the restraining order was not barred by res judicata or collateral estoppel.

D.      *The Order Does Not Impair Ramsey's Right to Free Speech*

Ramsey also argues that the restraining order infringes on her free speech related to the "legitimate purpose" of obtaining payment for a debt from Katz. But neither the First Amendment to the United States Constitution nor article I, section 2 of the California Constitution prohibits courts from incidentally enjoining speech in order to protect an individual's right to privacy or the right to exclude others from private property that is not a public forum. (See *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 881 (*DVD Copy Control*); *Donahue Schriber Realty Group, Inc. v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1178 (*Donahue*).) The "Legislature created § 527.6 to protect individuals' constitutional rights to pursue safety, happiness and privacy." (*R.D., supra,* 202 Cal.App.4th at p. 191.) "In California, speech that constitutes 'harassment' within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief." (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1250.)

18

Here, the challenged order restrains Ramsey from contacting Katz or his sons, and it requires her to stay at least 150 yards away from Katz, his sons, and his property. "'As a general rule, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership.'" (*Donahue, supra,* 232 Cal.App.4th at p. 1178.) Ramsey makes no argument that Katz's property is a "public forum," and she has no First Amendment right to enter his property for speech purposes. To the extent the order limits Ramsey's speech by restraining her from contacting Katz, it does so without reference to the content of her speech. The order thus is not a content-based prohibition on speech and is subject to rational basis review. (See *Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 763-764 (*Madsen*); *DVD Copy Control, supra,* 31 Cal.4th at pp. 877-879, [injunction that is justified without reference to content of restricted communications is content neutral].)

"Because the incidental restraint on [Ramsey's] speech that is a result of the restraining order is content neutral, the standard that governs whether it can pass muster under the federal and state Constitutions' free speech guarantees is the same as that governing the examination of any injunctive restriction: whether it imposes no more burden than is necessary to serve its legitimate governmental interests and whether it is thus a reasonable 'time, place, and manner' restriction in light of the importance of those interests." (*R.D., supra,* 202 Cal.App.4th at pp. 191-192, see *Madsen, supra,* 512 U.S. at pp. 765-766 [content-neutral restriction on speech should be no more burdensome than necessary to provide relief to plaintiffs]; see also *DVD Copy Control, supra,* 31 Cal.4th at pp. 882-883 [speech

19

on matters of private concern is entitled to less protection than speech concerning public issues].)

In this case, the speech that Ramsey claims the restraining order infringes upon is Ramsey's speech to Katz having to do with money allegedly owed by him to her, with no apparent relationship to any issue of public interest. It thus implicates a "less[er] First Amendment concern." (*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985) 472 U.S. 749, 759; accord, *R.D., supra,* 202 Cal.App.4th at p. 192.) "The restraining order, on the other hand, serves an important governmental and public purpose—the prevention of violence and harassment, and the protection of [Katz]'s and [his] family's right to safety and privacy—that section 527.6 was enacted to serve." (*R.D.,* at p. 192.)

Further, the restraining order's incidental infringement of Ramsey's speech is no broader or more restrictive than necessary to prevent Ramsey's harassment of Katz. Ramsey remains free to pursue other legal avenues to recoup amounts she claims are owed to her by Katz. The restraining order does not unlawfully infringe on Ramsey's free speech rights.

E. *Ramsey's Claims of Evidentiary Error Are Forfeited and Would Not Support Reversal*

Ramsey argues for the first time on appeal that the trial court failed to admit the parties' 2019 agreement, which she states authorized her to contact Katz if she compensated him. She also contends the court erroneously prevented her from presenting hearsay testimony, even though hearsay evidence is admissible under the civil harassment statute. (See § 527.6, subd. (i) [court shall receive any testimony that is relevant]);

20

*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 729.) In her view, such evidence could have proved she made no threats, had no recent contact with Katz, and was merely attempting to collect a debt.

Ramsey did not raise these objections before the trial court and has forfeited her claims of error. (See Evid. Code, § 354, subd. (a) [no reversal for erroneous exclusion of evidence without record that "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court."]; *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 ["issues not raised in the trial court cannot be raised for the first time on appeal"]; *In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 353 [same].) The record does not reflect a request from Ramsey that specific hearsay testimony or the 2019 agreement be admitted or considered at the hearing, and her motion for new trial referenced the 2019 agreement without any complaint that the trial court failed to admit it at the hearing (rather, her declaration confirms she submitted it to the court in conjunction with her response to Katz's petition).

But even if her evidentiary arguments were preserved, Ramsey fails to demonstrate any prejudice. (See Cal. Const., art. VI, § 13; Evid. Code, § 354 [reversal only for erroneous exclusion of evidence that results in a "miscarriage of justice"]; *Powell, supra,* 5 Cal.5th at p. 951 [trial court's discretionary decision to admit or exclude evidence "'will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice'"].)

Ramsey concedes the trial court had the parties' 2019 agreement before it at the time of the hearing. Even though the

trial court did not specifically identify it at the hearing, the court did allow testimony about the agreement. That the court did not embrace Ramsey's view of what occurred, or independently conclude that the purported 2019 agreement should preclude an injunction against her, does not demonstrate that the court did not consider what Ramsey had presented. Instead, the court determined that other evidence met the statutory standard for harassment. On substantial evidence review, we presume the judgment is correct and resolve all fact disputes and questions of credibility in favor of the prevailing party. (See *Denham, supra,* 2 Cal.3d at p. 564; *Schild, supra,* 232 Cal.App.3d at p. 762 [reviewing courts make all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence].)

But even if the trial did not consider the 2019 agreement, any error in failing to consider it was not prejudicial. That the parties may have agreed in 2019 that Ramsey would compensate Katz for future meetings and contacts does not mean that her course of conduct, communications, and trespass in 2020 and 2021 were justified or could not independently constitute harassment under section 527.6. By its own terms, the purported agreement also provided, among other things, that if Ramsey went onto Katz's property, he could discontinue his agreement to meetings and electronic contact. The court also credited Ramsey's testimony that her contacts with Katz had subsided in recent months, she had not threatened him, and that she was trying to collect on a debt, but it nevertheless concluded her conduct constituted harassment under the statute.

## DISPOSITION

The order is affirmed.  Katz is entitled to recover his costs on appeal.

MARTINEZ, P. J.

We concur:

SEGAL, J.

FEUER, J.

23